Mutual Insurance Company. The issue on this appeal is whether the trial court failed to follow Arizona law on the issue of reasonable expectations when the court ruled that the intrainsured exclusion in the American Family Umbrella policy is unenforceable. In order to determine under Arizona law whether the reasonable expectations doctrine is going to apply, the insurance company knew that the insured would not have accepted the policy if the insured had known about the term in question. That is a statement that carries through from Darner v. Universal Underwriters all the way through the latest case, Grabowski v. State Farm. That's really not what the court said in Foulness, did it? Well, the Arizona Supreme Court, as I read it, erected a little bit of a different standard. And in that case, we didn't have evidence of the subjective expectations of the insured or evidence about what the policyholder was told. Isn't that a little different than what you're describing the standard to be? No. It's a variation on the standard. In all cases, that is what the court has to determine, where there is evidence of the subjective expectations of the insured. And we don't have that here, correct? No. It doesn't mean that. That's where the court then looks at the three types of situations that the Darner court describes, whether the term is bizarre or oppressive, whether it eviscerates nonstandard terms, whether it eliminates the dominant purpose of the transaction, in conjunction with any facts and circumstances, in conjunction with the format and clarity of the policy. Well, that was the standard that the Ninth Circuit applied in Foulness. How does the policy in State Farm, which did not meet the reasonable expectation of an objective policyholder, how does that policy differ from the American family policy here? Okay. Well, we have to look back to Foulness, of course, and the case that Foulness relied upon, which was the State Farm versus Dimmer case. Both had identical or nearly identical exclusions in the policy. And the problem with the Dimmer policy, which carried over into the problem with the Foulness policy, was some very technical language that was found in the exclusion. And this is the huge difference between the American family exclusion and the State Farm exclusion. In the State Farm policy, we don't have the policy, but I will refer you to the Dimmer case, because the Dimmer case actually sets forth all of the language of the State Farm policy. Unfortunately, the Foulness decision simply refers back and says, we're going to rely on the Dimmer case, because it construes the same exclusion we're presented with here. So Dimmer, did you want the citation? No, we have it. Okay. It's on page, the Arizona citation, page 460 to 461 is where you'll find that exclusion. And it states, there's no coverage for any bodily injury to any insured other than you or number two family member of an insured residing in the same family. And it states, the extent the limits of liability of this policy exceed the limits of liability required by law. In the Dimmer case, the Arizona Court of Appeals found that while judges such as yourselves and lawyers such as the rest of us in the room might understand perfectly what that means. Was the policy in Foulness any different from that policy? The Foulness court said it was not. We don't have the language that you've, it's not clear that we've got the full provision quoted in Foulness, but I don't see that the court has even quoted or relied on the language that you said was the troubling language. What we decided in Foulness was with some language with ellipses that said, there's no coverage for any bodily injury to you, which sounds like it's pretty straightforward. Well, in the Foulness case, the court does refer to Dimmer, states, it does state in Foulness that we are relying on Dimmer, rather than, you know, remember there was a certified question to the Arizona Supreme Court and the Arizona Supreme Court said, look to the Averitt v. Farmers case, and that is how you will learn how to apply the reasonable expectations doctrine. Instead, when the case came back to the Ninth Circuit in Foulness, the court says, we're going to rely on Dimmer, State Farm v. Dimmer, because it is construing a virtually identical policy exclusion. Is our decision in Foulness correct? I'm not saying that is, it is correct. It is based on Dimmer. Dimmer is an Arizona Court of Appeals decision. That decision found that the language to the extent the limits of liability of this policy exceed the limits of liability required by law was technical and could not be understood by an average consumer. I mean, it was proper for the Foulness court, construing the same exclusion. To follow the Arizona Court of Appeals, we... Counsel, the language that we quoted in Foulness, again, it does have ellipses in it, so I can't see the full provision. We said, there is no coverage for any bodily injury to you. Now, admittedly, that may have been more confusing in the original, but it apparently wasn't the lack of clarity that we were concerned with. That seems to be about as clear as it could possibly be, and yet we found that the provision did not satisfy the reasonable expectations of the insured. On page... I would just say it struck me the same as it apparently struck Judge Bybee. So, like, what I would owe is sometime before you finish, explain your best argument for why you think the language of the policies are materially different here. Because if there's some difference, but it's not a material difference, we definitely have to follow the Foulness precedent. In State Farm v. Foulness, the Ninth Circuit decision, looking at page 967 of the decision. The court noted that the Arizona Court of Appeals decision in State Farm v. Demmer guides our application. And the court notes that the Demmers had purchased substantially the same form of policy from State Farm as the Huggs did here. Granted, the court uses the ellipses when it is setting forth in a footnote the exclusion in the Foulness case, but the Foulness decision, as I read it, and I believe it's a reasonable reading of the decision, simply follows the lead of Demmer in holding that this particular exclusion in this particular policy is unenforceable. Yes. I mean, certainly the Foulness court is relying on that as a legal precedent, but I don't think that's the case here. But what the case suggests to me is that if the Foulness court thought any language in the policy was material, they would set it out in their opinion. So do I understand your argument to be that we should say there's a material difference with regard to language that the Foulness panel could have used to set forth the language in a footnote? If that's your argument, it's striking me as a little counterintuitive, because normally the panel would set forth in their opinion whatever is material to their decision. Well, the court did set forth the language in a footnote, which might be somewhat limited in terms of what it could be. But the court doesn't do a lot in Foulness. Footnotes are just as precedential as the text of the opinion, and we don't have the limits on the size of our footnotes. All I can say, Your Honor, is that the court does state in the opinion that it's virtually identical to the exclusion in Demmer, and that it felt that it had to follow Demmer as precedent in finding this particular exclusion to be unenforceable. And unenforceable because of the technical language, and the court in Foulness does refer to the technical language of the exclusion and its inconspicuous location in the policy. So let me tell you why the American Family Umbrella policy doesn't suffer from those same defects. How do we know how the exclusion was presented in the State Farm policy, whether it was similar to the one we have here, whether it was buried in a more inconspicuous location? Again, we have to take it from what the court said in Foulness, which is it's virtually identical to Demmer. And then Demmer, a more expanded opinion with a lot more discussion of why that particular exclusion was defective. That's really the case that we should be focusing on, is what's the difference between Demmer and the American Family policy, because the Foulness court simply refers back and says we're going to follow Demmer because it's virtually identical. Yes, it would have been helpful for us to be able to compare the relevant policies and see the differences or have testimony below that would explain the difference between the policies in Demmer and Foulness and the policy here. We don't have that, do we, in this record? No, we do not. Do we have anything in the record that would suggest the agent, the American Family agent, made a disclosure to the policyholders about the exclusion? There is no evidence in the record, and I would point out that on summary judgment on a reasonable expectation claim, the plaintiff, they insured the parties seeking to invalidate the provision, has the burden of coming forward with such evidence. So I want to make sure that I understand the way that the policy works. I understand what happens with the uninsured motorist provision, but this means then that these folks were not covered under their own insurance policy for any injuries in a single car accident. They would not have coverage if there was a single car accident and an insured caused the accident and another insured sought damages as a result of his co-insurer. If I have this policy and I'm driving and I lose control of my car and crash into a pole and my car is damaged, can I get coverage for my car? That's a different coverage. That would be your collision coverage and you would be able to recover. And what about my personal injuries? Your personal injuries, you're the person who caused the accident? It's a single car accident. If you caused the accident, you would not be able to recover because you wouldn't be able to sue yourself for damages. And do the insurance companies, does your company offer, does your client offer insurance, does it offer a different policy at a higher rate to persons who wish to have themselves covered? No, it does not. Okay, so nobody is covered. Under standard automobile insurance policies in Arizona, no driver is covered for his own negligence. Is that right? That is true. And I would submit that is true throughout the country. We're talking about a different situation here where you have an innocent passenger in a vehicle who happens to be a wife or a child who has been injured in an accident caused by, let's say, his father. That's the issue we have here is whether that child can recover under the insurance policy for the injuries that his father caused. Under a primary auto policy under Arizona law, the minimum financial responsibility limits, regardless of this type of exclusion, must be available to that child. That is the Arsenault decision, and I don't have the citation at my fingertips. What we're talking about here is liability coverage, and in the case of this particular case, umbrella policy coverage over and above minimum financial responsibility limits. There's still medical coverage for injudged by these hypothetical. If there's medical payment, if they have purchased medical payment coverage on their auto policy, that would be available. But not if they haven't purchased it. Under standard, whatever it is, 100, 300, 100, you haven't, you're not covered if you caused the accident. And your family members who are injured are not covered if you caused the accident, except up to the financial responsibility limits, which in Arizona are 1530. Is it, is your client's concern that they're going to be, that this whole provision is, that this provision cannot be limited to this case? That is, that your client is going to be liable in every insurance policy, automobile insurance policy that it issues to the insured in a particular case. And that is one of the reasons we are here at the Ninth Circuit, is that we have to follow a decision that is now being applied across the board to all household exclusions without the fact-finding inquiry that the Arizona case has required. Number one. Number two, a finding in this case, in the district court's ruling in this case, would have the practical effect of rendering this exclusion unenforceable across the board. Are you saying the Arizona courts are treating this as a per se unenforceable provision? The district courts are, yes. What about the Arizona state courts? The Arizona state courts have done that, although we have that recent State Farm v. Grabowski case, which, again, reiterates, as the Supreme Court cases have reiterated, this doctrine is to be applied on a case-by-case basis. The courts in Averitt, Gordinier, all the cases we cite have said, these exclusions are not per se unenforceable. They are enforceable. But it sounds like the current practice in Arizona, both state court and federal court, is that they are virtually per se unenforceable. Because of the State Farm v. Faulness case. Which the Arizona courts haven't made any attempt to correct, and the Arizona legislature hasn't made any attempt to correct. It probably hasn't been up, State Farm v. Grabowski is one of the few cases that have come along afterwards. That court made it very clear that it was to be decided, it was to be determined on a case-by-case basis. Our Faulness decision is 14 years old. It seems like a lot of time, if Arizona courts disagree, which they are perfectly free to do, they are not bound by our decision on Arizona law. If the Arizona courts really thought that our decision in Faulness was wrong, and the courts were continuing to misapply it, it would seem that the Arizona courts would have ample opportunity, as would the Arizona legislature, to correct our error. Well, I could not find a citation to Faulness in any subsequent Arizona cases. We are not saying that the court's decision in Faulness was wrong, or that it was decided based on an improper or erroneous interpretation of the law. We are saying Faulness is limited to its facts. And in this case, the Morgan case, the trial judge should have, should not have followed that ruling as a fact. It should have followed that ruling as precedent in terms of what the American Family Umbrella Policy says. I would also, it looks like I'm very over, I wanted to refer you to the Powers v. State Farm case. That is a household exclusion in a homeowner's insurance policy. It is virtually identical to the American Family Umbrella Policy in terms of its language. The Court of Appeals in that case found that the trial judge correctly referred to the American Family Umbrella Policy. Held that the reasonable expectation doctrine did not prevent enforcement of that exclusion. And if you have no further questions, I will turn it over to opposing counsel. Ms. Allen, we consumed some of your time, and I do want to give you an opportunity for rebuttal, so we will allow you a minute for rebuttal. May it please the Court, good morning. We are, I'm sorry, for the record, would you state your name? Oh, Ron Oser, Your Honor, for J. Morgan and the Joneses, the Appellees. Your Honors, we're here today because there was a tragic motor vehicle accident in which Jerry Morgan was killed. John Morgan was seriously injured and has brain damage. They left a minor child. J. Morgan, Jerry Morgan also left parents who are statutory beneficiaries under Arizona's wrongful death law. They made a claim for coverage under the umbrella policy that we've all been talking about. Is the household exclusion, per se, unenforceable in Arizona? The household exclusion is not, per se, unenforceable in Arizona according to the case law. What the courts have said is, number one, the Faulness Court, the Darner Court, and the Averitt Court say that this is an unexpected exclusion. That a reasonable insured expects coverage for family members and spouses' claims. Therefore, an insurance company must call this exclusion to the attention of the insured in some way, because it's unexpected, to make sure there's a true meeting of the minds and that this exclusion is not merely being imposed upon an unwitting... And if the insurance company had done that in this case, then what would have happened? If the insurance company would have called this exclusion to the attention of the insured, and if they would have done it sufficiently, then it could have been enforceable. But, Your Honor, I would submit they did not do it. I'm actually asking you just a slightly different question. I realize it's a little ambiguous. The insured doesn't really have... This looks like this is a standard provision in insurance policies written in Arizona and perhaps every place else. And your clients aren't going to turn... Aren't going to say, well, in that case, we don't want automobile insurance, because they must have it by state law. On the other hand, it doesn't appear, at least from what I understood from Ms. Allen, that insurance companies are offering a product without this provision in it. Well, and that's really beyond the scope of the record as to whether any insurance companies offer it without this product in it. Then let's go to Judge Timkovich's question, then, as to whether that doesn't make this provision per se unenforceable. If this is, as you said, an unexpected exclusion, well, then it's unexpected across the board, right? Well, I can tell you that the Ninth Circuit in Falmouth clearly said that a reasonable insured expects coverage for their spouse's claim. And the Arizona Supreme Court in Darner said the same thing, that in criticizing the Gibbs case, they said that it's unlikely that Mr. Gibbs would expect coverage or protect everybody in the entire world except for his family. And so, as a matter of law, Arizona courts in Arsenault, not Arsenault, excuse me, Averitts, another case that said the same thing, that it's an objective test, and objectively, reasonable insureds expect that coverage for spouse's claims. I don't know if counsel's representation, I'm sorry, Judge, is correct that it's never offered. Well, that would be a per se rule, then, unless there's some evidence in the record that the agent affirmatively told the policyholder about the provision, correct? There's no evidence. It would be inadequate as a matter of law in Arizona to just provide the contract to the consumer without affirmatively discussing the provision. The cases use the word that, given that it's unexpected, it needs to be called to the attention of the insured. What does that mean? Certainly an agent specifically stating to the insured, by the way, you know, this exclusion exists. But it's not good enough to give them the policy and say read it? No, it's not. Because called to the attention of the insured. Okay. Which case are you relying on for that exposition of Arizona law? The Due case specifically indicates that Mr. Due had the policy. And in the Due case, court of appeals case, the exclusion is quite clear if you read it. And what the Due case said is. In that case, the agent told him misrepresented the terms of the policy after he inquired about what the scope of the coverage was. Is that correct? The agent, I think, was silent after Mr. Due said I want coverage for my family. And the agent maybe didn't inform him of this exclusion. Right. Under the first prong of fallness, the court found that there was some reason to believe that the policyholder had been misled. But here we don't have facts that would indicate whether there was any misrepresentation by the insurance company, do we? No. There's no misrepresentation. We have no affidavit from the sales agent. So I think a reasonable inference is the sales agent didn't tell them anything about this exclusion. But in fallness, given the absence of facts, we then looked at the policy itself. We looked at the clarity of the provision and the terms and conditions of the policy. We didn't really look at what the insurance company said or didn't say. And assuming this is not a per se unreasonable exclusion, what makes this provision particularly bizarre, oppressive, contrary to the dominant purpose of the contract, the other things that fallness and the restatement instruct us to consider? Judge, again, the Arizona fallness and the Arizona Supreme Court have said that reasonable insureds don't expect this exclusion. So the insurance companies need to call it to their attention. I would submit to you that just saying read the policy when the exclusion is buried in the fine print, the 10th of 25 exclusions is not calling it to the insured's attention. Calling it to the insured's attention must mean differentiating it in some way from the rest of the exclusions that include nuclear accident and war and other exclusions that are very unlikely to be triggered. Why is this exclusion any more obscure or hard to understand than the other 24 in the policy? Well, there are some problems with the clarity of the exclusion in this case, which I've included in the brief. And namely, number one, the declaration page says that coverage is provided $1 million per occurrence. Occurrence is essentially defined as an accident. A reasonable insured checking on their coverage would read that and assume I have got $1 million in coverage for an accident. Why wouldn't the reasonable consumer read that, go to the definitions and figure out what occurrence means? And then the consumer could just as easily go to the definitions section for insured and understand that the household exclusion is also contained in there. What makes this exclusion more obscure or difficult to understand than any of the other ones? Well, number one, it's buried in the boilerplate, 10th of 25. No all caps, no bold, no separate section, no place for insurance. They're all that way. That's true for every single exclusion. Why is this exclusion different than the others? The Arizona Supreme Court has singled out this exclusion since 1984 in Darner. The Arizona appellate courts have said this exclusion is problematic. And that's why there have been a series of cases saying that reasonable insureds expect coverage. This is not the same as every other exclusion. Why? Because this guts a lot of coverage. Family members often injure other family members. And family members' permissive users often injure other family members. Why? Because most people are often driving with their family. That's why insurance companies like this exclusion, because it guts a lot of coverage. Well, is it fair then to say, I get your position or your reading of Arizona law, is that it's a per se, it's per se unenforceable unless it's been pointed out by the insurance company? Is that a fair restatement of your position? I think so, unless it's been called to the attention, unless it's been truly agreed to and not merely imposed upon an unwitting customer. And, Judge, I would just like to say that we're not imposing any impossible burdens on the insurance industry. They could simply bold it, put it in all caps, have an insured initial it. They could write a letter to every insured now putting them on notice that this exclusion exists. And that would cover existing policies. There could be a little affidavit from an agent saying, I have specifically discussed this with my insured. This is inexpensive. It's simple to do. And, quite frankly, American Family and all other insurance companies have known of these problems since 1984. The Darner decision, it's been 25 years. And yet they've done nothing. They couldn't have hid this exclusion any better if they would have tried to. Tenth of 25 in the policy fine print, nothing to make it consistent. It's hard for us to tell this because we don't have the State Farm policy that was at issue in Falleness. And, you know, you make a good argument. The problem I have in Falleness is that the court there, you know, it said, well, we're going to look at the format and clarity of the policy and then, you know, went on to do so. And, you know, that's a pretty meager standard. You know, we don't know whether these contracts have been modified, you know, industry-wide since that case. I presume this contract's been approved by Arizona insurance regulators, correct? You mean this, the American Family one? Sure. You know, I'm not sure of the approval process. And I guess it's beyond the scope of the record. But, you know, I can tell you that if you look over the last 25 years, whether they've been approved or not, you've got the Falleness case, obviously, as a matter of law, holding this exclusion under unenforceable. You've got the Due case, again, as a matter of law, holding a similar exclusion unenforceable. You've got, you know, the Bogart case, a very similar exclusion is held unenforceable. The Averitt case, reversing summary judgment in favor of the insurance company. What about Powers and Grabowski that seem to uphold exclusions? How do you distinguish them? The Powers case, with all due respect to that Court, just misstates Arizona law. The Powers case relied on a statement in that opinion that a misrepresentation by the sales agent or the insurance company is required for an exclusion to be unenforceable based on reasonable expectations. It's contrary to Darner. It's contrary to Bogart. It's contrary to Averitt. It's contrary to virtually every other case. Again, with all due respect to that Court, Powers is just not good Arizona law on that point. It's... Counselor? Mr. Olson? Yes. In light of the Powers case, is there any counterintuitive possibility that we could or should recertify this question to the State Supreme Court? It does seem sort of odd or counterintuitive to certify when we did that before, but if there still are some conflicts in the testimony and it's not clear here, is that an option for us? Judge, I don't think it's necessary in this case because the last time the Ninth Circuit certified this question to the Arizona Supreme Court in Faulness, the Faulness Arizona Supreme Court decision went through Arizona law and they endorsed the Averitt decision, I believe the Gordinier decision, some other decisions. I think that the Arizona Supreme Court did certainly a more than adequate job of explaining Arizona law. Significantly, the Faulness Arizona Supreme Court case does not mention Powers and Powers is a late 80s case. I think, Judge, that in light of all the cases in this area, Averitt, Due, Dimmer, Faulness, Darner, that any reasonable reading of all the cases along with Powers just indicates that the Powers court just misstated Arizona law by saying that a misrepresentation on the part of the insurance company is necessary to find an exclusion unenforceable based on reasonable expectations. Is there any... I'm sorry. Go ahead, Judge Gould. Thanks for your answer. Thank you, Judge. Counsel, is there any case other than Faulness where the court, based on the policy alone, the language of the policy alone, finds the exclusion unenforceable? Well, there's the Due case, and I know that there was some deposition testimony in the Due case as well, although the court did point out in Due, and I can quote it, and they're quoting actually the Bogart court in Arizona Supreme Court, and what Due says at 1258 is the Bogart court found that any boilerplate which eviscerates the coverage on the declaration page must be called to the insured's attention because it is improbable that a buyer will read or understand all the fine print after purchase, which... And it's your view that this provision does eviscerate coverage? Absolutely. The declaration page represents 1 million per occurrence, and then... Well, page 2 says there's a bunch of exclusions. Turn to page 4. I mean, every exclusion limits coverage, doesn't it? What makes this one particularly unfortunate? Well, because the Arizona Appellate Court's in several decisions over the last 25 years have found this particularly problematic exclusion that is unexpected to a reasonable insured, and you're exactly right, Judge, that every exclusion does limit coverage. Certain exclusions have been sort of... have received additional scrutiny and are more problematic. Obviously, you can't highlight every single one, but this particular one, the courts have said, you've got to make it conspicuous. You've got to call it to the insured's attention, and that must logically... It must mean more than doing nothing, than lumping it in with all the other exclusions in the fine print. If all an insurance company had to do to call this to the insured's attention is write it in the exclusion section, all of these Arizona appellate cases would be written differently. I mean, for those cases to be meaningful... You know, having a conspicuous... It must mean doing more. It must mean doing more than they did in this case, and I put it in the brief. I won't belabor the point, but we think there are clarity problems here. They call it the intra-insured suit exclusion. You know, intra really means within. It should be inter. You know, suit, does it apply to claims that are pre-suit? You know, here we had a claim. It was denied, and then we had to file a lawsuit. Why not just call it, in simple language, one insured can't make a claim against another insured? It would have been a lot more clear, but they didn't do it. And I know I'm out of time. If there are any more questions, I would be more than happy to answer. Thank you, Mr. Osler. Thank you. Ms. Allen, we'll allow you a minute for rebuttal if there's something that you'd like us to hear. Thank you, Your Honor. I do want to cover a few points. First, the Abbott decision expressly states and notes that its decision should not be read to mean that all household exclusions are unenforceable. That is language that is parroted in other cases. Number two, there is no per se rule that this exclusion is unenforceable. Abbott says it. The rest of the cases say it. What's interesting is that the only case that the Arizona appellate courts have actually entered a finding in favor of the insured is the Due case. In the Due case, there is no finding or discussion in that case that there was any problem with the format or the clarity of the insurance policy. In the Due case, it turned on the fact that the insured had asked questions of the agent and the agent was not forthcoming with him about the fact that coverage would be limited if his family was injured in a single-car accident. That's the Due case. There was no opposing evidence. The court affirmed summary judgment. All exclusions operate to eviscerate the coverage on the deck page. We've cited a couple of cases, Green v. MidAmerican. It's not possible to include every detail of coverage on the deck page. Millar v. State Farm also makes the same point that if all that was required for the invoking of this doctrine was an exclusion that took away coverage, all exclusions would be unenforceable. This one is no different. Ms. Allen, Judge Gould with a question here. Again, I have a question that I ask your opposing colleague. Is there any chance that despite the prior certification and detailed answer that we should recertify this question again? I mean, can it credibly be said that the Arizona law is unclear so that we have to recertify? I don't believe that Arizona law is unclear. Arizona courts have made it clear that there is no per se rule and that these policies are to be considered on a case-by-case basis. I think the only benefit to certifying the question would be able to ask the court to look directly at State Farm v. Faulness, the Ninth Circuit decision, and to render an opinion on it, although we're not arguing that that case was incorrectly decided. It was correctly decided on its particular set of facts and on its particular policy language. All we are asking this Court to do and all we ask the trial judge to do was to consider the American family policy on its own merits and to not apply Faulness as a per se rule against these types of exclusions. Does that answer your question, Judge Gould? Yes. Thank you. Thank you. Thank you, Ms. Allen. Thank you. We thank counsel for the argument. The case is submitted.
judges: Gould, Bybee, Tymkovich